# United States District Court
# Central District of California

FILED
CLERK, U.S. DISTRICT COURT

MAY 18, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: ____BH____ DEPUTY

Hurst International, LLC,

               Plaintiff,

        v.

Sinclair Systems International, LLC

               Defendant.

CV 17-8070-VAP (ASx)

## Order DENYING in part and GRANTING in part Defendant's Motion to Dismiss

## (Doc. No. 31)

On April 2, 2018, Defendant Sinclair Systems International, LLC ("Defendant") filed a Motion to Dismiss.  (Doc. No. 31 ("Motion").)  Plaintiff Hurst International, LLC ("Plaintiff") timely opposed on April 17, 2018, (Doc. No. 35 ("Opposition")), and Defendant replied on April 30, 2018, (Doc. No. 36).  After considering all papers filed in support of and in opposition to Defendant's Motion, the Court deems this matter appropriate for resolution without oral argument of counsel.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court GRANTS the Motion as to Plaintiff's Intentional Interference with Prospective Economic Advantage claim and DENIES the Motion as to the other five claims.

## I.  BACKGROUND

Plaintiff and Defendant are direct competitors in the "market for the sale or lease of produce labeling machines and labels to produce

1

companies and packers in the United States (the 'Relevant Market')."  (Doc. No. 29 ("FAC") ¶ 1.)  Plaintiff avers that Defendant has a 70% to 80% share of the Market, and only two principal competitors — Plaintiff, which has approximately 8% of the Market, and JBT, which has "most of the remainder."  (FAC ¶ 5.)  Plaintiff further alleges that the Relevant Market is a difficult market to penetrate and expand within, and Defendant uses predatory practices "to further raise the barriers to entry and expansion and maintain and increase its entrenchment within the space."  (FAC ¶ 2.)

Plaintiff alleges Defendant has secured, or has a dangerously high probability of securing, a monopoly using predatory business practices, including (1) using long-term multi-year leasing contracts for their machines, which are subject to immediate repossession on contract termination, (FAC ¶ 6(a)); (2) making false and disparaging comments to Plaintiff's potential customers, including claiming Plaintiff's labeling systems do not work, its customers are dissatisfied, its labels are made with non-FDA approved adhesives, and its "print on demand" ("POD") barcodes do not scan, (FAC ¶ 19); (3) offering free or below-cost labeling machines and labels to customers considering buying and leasing from Plaintiff, (FAC ¶ 20); and (4) eliminating installation and rental fees and cutting label costs for a period of time in exchange for the packer renewing or entering into contract with Defendant, (FAC ¶¶ 21-22).

Plaintiff thus brings the following claims against Defendant: (1) Monopolization, 15 U.S.C. § 2; (2) Attempted Monopolization, 15 U.S.C. § 2; (3) Price Discrimination, 15 U.S.C. § 13; (4) Below-Cost Sales, California Business and Professional Code ("BPC") § 17043; (5) Unfair

Competition ("UCL"), BPC §§ 17200, *et seq.*; and (6) Intentional Interference with Prospective Economic Advantage ("IIPEA").  (*See* FAC.)

## II.   LEGAL STANDARD

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court shall determine "whether they plausibly give rise to entitlement to relief."  *See id.* at 679;

*accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee*, 250 F.3d at 688.

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").  Where allowing the plaintiff to amend his complaint would be "an exercise in futility," however, the court need not grant leave to amend.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

## III.   DISCUSSION

### A.   Sherman Act, 15 U.S.C. § 2 (First and Second Claims); Clayton Act, 15 U.S.C. § 13 (Third Claim)

Plaintiff's first and second claims allege monopolization and attempted monopolization, respectively, of the Relevant Market under the Sherman Act, 15 U.S.C. § 2. (FAC ¶¶ 34-43.)  These two claims are

premised on allegations of predatory pricing and trade disparagement. (FAC ¶¶ 34-43.)

"There are three essential elements to a successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal 'antitrust' injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010). Similarly, "to demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). In other words, Section 2 "makes the conduct of a single firm unlawful only when it actually monopolizes or dangerously threatens to do so." *Id.* at 458. Finally, "[i]n addition to these elements, private party plaintiffs seeking damages for antitrust violations must also demonstrate antitrust injury." *Safeway Inc. v. Abbott Laboratories*, 761 F. Supp. 2d 874, 886 (N.D. Cal. 2011) (citing *Rebel Oil Co. v. Alt. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)).

"The requirements of both [monopolization and attempted monopolization] claims are similar, 'differing primarily in the requisite intent and the necessary level of monopoly power.'" *Id.* (quoting *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1202 (9th Cir. 1997)). "Anticompetitive conduct alone can satisfy the specific intent requirement [of an attempted monopolization claim] if the conduct forms the basis of a substantial claim of restraint of trade or is clearly threatening to competition or clearly

5

exclusionary." *Confederated Tribes of Siletz Indians of Or. V. Weyerhaeuser Co.*, 411 F.3d 1030, 1042 (9th Cir. 2005), *vacated on other grounds by* 549 U.S. 312 (2007); *see also Spectrum Sports*, 506 U.S. at 459 (holding a defendant's unfair or predatory tactics "may be sufficient to prove the necessary intent to monopolize").  Thus, Plaintiff adequately pleads specific intent as long as it can sustain a viable antitrust theory — *i.e.* a theory of predatory pricing or trade disparagement.  Since at this stage in the proceedings, the requirements for Plaintiff's monopolization and attempted monopolization claims are substantively identical, the Court addresses them together.

Further, Plaintiff's Clayton Act, 15 U.S.C. § 13, claim is premised on a theory of predatory pricing.  (FAC ¶¶ 44-48.)  Where an antitrust action is premised on predatory pricing, the Robinson-Patman Act, an amendment to the Clayton Act, has the same substantive elements as § 2 of the Sherman Act.  *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993).  For purposes of this Motion, therefore, the Court addresses Plaintiff's two Sherman Act claims, insofar as they are based on allegations of predatory pricing and Plaintiff's Clayton Act claim, together.

Defendant attacks Plaintiff's federal claims on the grounds that Plaintiff has not alleged sufficient facts to establish predatory pricing, trade disparagement, or antitrust injury.  (*See* Mot. at 3-12.)  Defendant also argues that Plaintiff has not defined a relevant geographic market.  (Mot. at 11.)  The Court first addresses Defendant's argument regarding the Relevant Market since this element is necessary for all of Plaintiff's federal antitrust theories and claims.  The Court then examines each antitrust theory in turn, and finally whether Plaintiff adequately alleges injury.

### 1. The Relevant Market

"A 'relevant market' is determined by a product market and a geographic market."  *Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1126 (C.D. Cal. 2008).  "When considering the sufficiency of allegations related to the relevant market and power in the market, 'there is no requirement that these elements of the antitrust claim be pled with specificity,' and an antitrust complaint will survive Rule 12(b)(6) scrutiny 'unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect.'"  *Id.* (quoting *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)).  For instance, "a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable."  *Newcal*, 513 F.3d at 1045.

Here, Plaintiff alleges that it, Defendant, and JBT "have marketed and sold or attempted to sell their products to packers nationwide."  (FAC ¶ 5.)  Plaintiff then proceeds to give specific examples of how the market and competition varies by state.  (FAC ¶¶ 5, 24-25.)

Defendant challenges Plaintiff's definition of the Relevant Market on the grounds that the geographic market is "hopelessly muddled."  (Mot. at 11 (citing *Ticketmaster L.L.C. v. RMG Techs., Ins.*, 536 F. Supp. 2d 1191, 1195-96 (C.D. Cal. 2008) (finding the plaintiff's proposed market definition was "hopelessly muddled" where some allegations pertained to a services market and others to a goods market, and the goods and services "do not belong in the same market.")).)  In support, Defendant argues that Plaintiff's definition of the Relevant Market as nationwide is inconsistent with its

7

factual allegations because the allegations contain state-specific prices and market shares.  (*Id.*)

"The geographic market extends to the 'area of effective competition' . . . where buyers can turn for alternate sources of supply."  *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988) (citation and formatting omitted).  A plaintiff therefore does not already have to be present in a geographic area for that area to be included within the relevant market definition, contrary to Defendant's argument.  *See Portney*, 593 F. Supp. 2d at 1127 ("[A] geographic market is limited not only by the area in which the seller operates, but also by the area 'to which the purchaser can practicably turn for supplies.'" (quoting *United Statees v. Philadelphia Nat'l Bank*, 374 U.S. 321, 359 (1963)).  In other words, any area where companies compete to sell the relevant product — produce labeling machines and labels here —may properly be included within the definition of the relevant market.  Nothing alleged in the FAC indicates that there is any state where competition is infeasible, absent unfair or illegal practices. Defendant's argument that the state-specific allegations "hopelessly muddled" the Market definition thus lacks merit; Plaintiff pled a tenable definition of the Relevant Market.

### 2.  Predatory pricing

"[W]hen predatory pricing is at issue, a plaintiff must demonstrate that '(1) the prices complained of are below an appropriate measure of its rival's costs; and (2) there is a dangerous probability that the defendant will be able to recoup its investment in below-cost prices.'"  *John Doe 1 v. Abbott*

*Labs.*, 571 F.3d 930, 934 (9th Cir. 2009) (quoting *Pacific Bell Telephone Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (internal formatting and citations omitted)).  Defendant argues Plaintiff's complaint fails to allege adequately either of the elements required for a predatory pricing claim.

### a.  Below-cost pricing

Defendant argues that Plaintiff fails to plead below-cost pricing because (1) the facts alleged in the FAC are consistent with "free trials" and competitive behavior, rather than below-cost pricing; (2) Plaintiff does not specify which customers received the below-cost offers alleged in the FAC, nor when and where they are offered; and (3) Plaintiff does not allege an appropriate measure of Defendant's costs.  (Mot. at 7-9; Reply at 5-7.)

Defendant's arguments lack merit both at this stage in the proceedings, as well as under Rule 8, the pleading standard that governs antitrust actions.  *See Newcal*, 513 F.3d at 1045 ("There is no requirement that these elements of the antitrust claim be pled with specificity."). Plaintiff's FAC alleges that Defendant has "eliminate[d] installation and rental fees, and cut [its] label prices in half even though, on information and belief, Sinclair's cost of goods on labels is not under 50%."  (FAC ¶ 22.)  It also avers that Defendant has waived "rental and label fees for a period of time, in exchange for the packer renewing or entering into a contract with Sinclair."  (FAC ¶ 21.)  Allegations that Defendant offers free services and products, as well as a 50% discount when the cost of the goods is above the discounted price, are adequate to allege below-cost pricing.

9

Whether Defendant's offers are, in fact, free trials or lawful competitive behavior is a question of fact, inappropriate for resolution at this stage of the proceedings.  Further, Plaintiff is not required to plead with the degree of specificity advocated by Defendant, nor to pose an appropriate measure of Defendant's costs.  Free goods and services are necessarily below the cost of rendering or producing them.

Thus, Plaintiff has pled adequately the first prong of a predatory pricing claim.

### b.  Recoupment

"Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation.  Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced."  *Brooke Group*, 509 U.S. at 224.  To establish recoupment where no oligopoly is alleged, a plaintiff must show: (1) the defendant's below-cost pricing drove, or there is a dangerous probability of driving, rivals from the relevant market; and (2) "there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it."  *Id.* at 225.  Further,

> [e]vidence of below-cost pricing is not alone sufficient to permit an inference of probable recoupment and injury to competition. Determining whether recoupment of predatory losses is likely requires an estimate of the cost of the alleged predation and a close analysis of both the scheme alleged by the plaintiff and the structure and conditions of the relevant market.

*Id.* at 226.

Defendant's attacks on Plaintiff's recoupment allegations are similar to those it mounted against Plaintiff's below-cost pricing allegations. Defendant argues Plaintiff fails to plead recoupment because (1) Plaintiff improperly pleads allegations "on information and belief;" (2) Plaintiff does not specify to which customers Defendant offered below-cost pricing nor the specific details of any such offer; and (3) Plaintiff does not plead specific facts demonstrating that Plaintiff or a competitor has been or is likely to be driven from a relevant market.  (Mot. at 4-6.)

As previously discussed, there is no requirement that an antitrust claim be pled with specificity.  Plaintiff thus does not need to plead the "who, what, when, where, and how of the misconduct charged," as it would if this were an action for fraud falling under Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); Fed. R. Civ. P. 9(b).  Defendant's arguments regarding Plaintiff failing to provide adequate detail and specific facts thus fall flat.

Under Rule 8, Plaintiff has adequately pled recoupment.  Plaintiff sets forth allegations regarding Defendant's below-cost pricing strategy, as discussed above, and describes how these pricing strategies are being used to drive Plaintiff and JBT from the market by locking customers into long-term contracts.  (FAC ¶¶ 3, 18, 20-27).  Plaintiff then provides two specific examples of Defendant's supracompetitive pricing, where Defendant allegedly drove Plaintiff from the Market in Georgia and Florida using below-cost pricing measures, and then more than doubled its

11

standard pricing on pre-printed labels.  (FAC ¶¶ 24-25.)  Plaintiff avers that Defendant "willingly assumes the short-term losses associated with these below-cost pricing strategies because Sinclair knows they will drive competitors from each state where they are implemented, and that once they have done so, Sinclair can subsequently recoup its losses and preserve its monopoly prices."  (FAC ¶ 23.)  These allegations are sufficient to establish a causal link between predatory pricing and increased prices; Plaintiff has thus cured the defect in its original complaint.

Finally, Defendant argues that the Court should disregard Plaintiff's allegations "on information and belief" that Plaintiff was forced from the Market in Georgia and Florida, (FAC ¶¶ 24-25), because this information is within Plaintiff's knowledge.  Defendant's contention lacks merit.  Plaintiffs may base their allegations "on information and belief" under Rule 8, particularly where they are based on indirect support or facts not within their possession.  *See GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, No. 16-CV-00100-ODW (AFMx), 2016 WL 3027336, at *3 (C.D. Cal. May 26, 2016) (compiling cases); *see also* 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1224 (3d ed. 1998).  Here, Plaintiff posits that Defendant's below-cost pricing strategies forced Plaintiff from the Markets in Florida and Georgia, and Defendant then controlled 90% to 100% of the Market in those states.  (FAC ¶¶ 24-25.)  Plaintiff does not have direct knowledge of all of these facts, or the facts required to draw these conclusions.  It is thus appropriate to state the allegations "on information and belief" and for the Court to accept them as true for the purposes of a Rule 12(b)(6) motion.

12

For the reasons above, the Court finds that Plaintiff alleged a cognizable theory of predatory pricing in its FAC.

### 3. Trade disparagement

"While the disparagement of a rival . . . may be unethical and even impair the opportunities of a rival, its harmful effects on competitors are ordinarily not significant enough to warrant recognition under § 2 of the Sherman Act."  *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997).  There is therefore a presumption that the effect of disparagement on competition is *de minimis* in the Ninth Circuit.  *Id.* at 1152.  To overcome this presumption, a plaintiff must show that the representations were "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals."  *Id.* (quoting *National Ass'n of Pharmaceutical Mfrs. v. Ayerst Labs.,* 850 F.2d 904, 916 (2d Cir.1988)).

Defendant argues Plaintiff does not adequately plead the latter three elements required for a showing of trade disparagement; the Court therefore does not address the first three elements further.  Defendant focuses its argument exclusively on two of Plaintiff's predatory pricing examples and contends they show that Plaintiff was able to offset the impact of the alleged disparaging statements.  (Mot. at 10-11.)  It further contends in a footnote that Plaintiff "also alleged no facts to suggest that the false statements

continued for a prolonged period or that Sinclair's customers . . . had no knowledge of POD technology."  (Mot. at 11, n. 6.)

As an initial matter, nothing in the FAC indicates that the five examples of conduct in paragraph 21 are the only instances of Defendant's anticompetitive conduct.  Limiting the assessment of Plaintiff's trade disparagement allegations to those few examples is inappropriate.

Plaintiff alleges Defendant's sales representatives have represented to Plaintiff's potential customers that

> Hurst's labeling systems do not work, existing Hurst customers are dissatisfied with its performance, Hurst's labels are made with non-FDA approved adhesives and do not stay on produce, and Hurst's print-on-demand barcodes do not scan.  In addition to being patently false, these representations are material, and likely to induce reliance, particularly when Sinclair makes them to packers with whom it has longstanding relationships, as they pertain to: (a) the safety of labels intended for use on food for human consumption and (b) the performance of systems and labels intended for customers who are especially sensitive to having effective, well-operating equipment and labels as they deal with perishables and cannot afford significant downtime to deal with issues regarding the same.  These are also matters that customers would not generally have knowledge of and that largely cannot be verified absent firsthand experience, which most customers would be unwilling to risk.  For the same reasons and given Sinclair's use of long-term contracts and the substantial time and cost involved in changing systems once a competing one has been installed, the damaging effects of these misrepresentations are not readily susceptible to neutralization by Hurst.  While packers typically do not disclose their reasons for rejecting Hurst's proposals, a packer that has had a longstanding relationship with one of Hurst's sales representatives in Washington has confided that Sinclair's misrepresentations deterred it from considering Hurst for several

14

months until it finally realized it had no other viable alternatives for POD.

(FAC ¶ 19.)

As to the fourth element, the subject matter at issue is Plaintiff's labeling machines and labels, not POD labeling machines more generally. Plaintiff alleges that Defendant targeted its disparagement campaign against Defendant's longstanding customers, who may consider switching to Plaintiff's products.  These customers are not present customers of Plaintiff and therefore do not have firsthand knowledge of Plaintiff's wares. The alleged misrepresentations primarily bear on the reliability of Plaintiff's goods, for which firsthand knowledge is critical, particularly in a market where much of the sales and product information is conveyed on an individualized basis.  Thus, Plaintiff has plausibly alleged the fourth element.

Similarly, the alleged individualized pitching and sales, combined with long-term contracting and difficulty in changing systems, makes the claim that the misrepresentations are not readily susceptible to neutralization plausible.  Finally, the allegations of Defendant's anticompetitive conduct in the FAC spans years, and Plaintiff alleges that Defendant made such representations to multiple potential customers.  It is thus reasonable to infer that the representations continued for a prolonged period at this stage in the proceedings.

Accordingly, the Court finds Plaintiff pleads a cognizable theory of trade disparagement.

### 4.  Antitrust injury

Defendant's contention that Plaintiff fails to allege an antitrust injury hinges on its arguments that Plaintiff did not adequately plead predatory pricing and trade disparagement.  (Mot. at 12-13.)  As discussed above, these arguments fail.  Plaintiff has alleged Defendant's conduct has harmed the competitive process and that its losses in market share and profit flow from this harm; hence, its allegations are sufficient to allege antitrust injury.  *See Rebel Oil*, 51 F.3d at 1433.

In sum, Defendant's challenges to Plaintiff's Sherman Act and Clayton Act claims all lack merit.  The Court thus DENIES Defendant's Motion as to these claims.

### B.    State law claims

Defendant also moves to dismiss Plaintiff's three state law claims.  A number of Defendant's arguments are the same as those set forth as a ground for dismissing Plaintiff's federal claims; having already found these arguments unavailing, the Court does not address them further.  The Court turns to Defendant's remaining arguments below.

### 1.  UCL Claim

Defendant argues that Plaintiff's UCL claim must be dismissed because Plaintiff does not allege injury from any conduct in California.  (Mot. at 13-14); *see Sullivan v. Oracle Corp.*, 51 Cal. 4th 1991, 1208 (2011) ("Certainly the UCL reaches any unlawful business act or practice committed in California.").  Defendant is mistaken.  Plaintiff defines the Relevant Market as nationwide.  (FAC ¶ 1.)  Plaintiff also alleges that 40% to 50% of its total business is in California, as well as both its own and

16

Defendant's principal place of businesses.  (FAC ¶¶ 5, 28-29.)  Because Plaintiff pleads tenable antitrust claims, as well as injury flowing from those claims, and the Market is nationwide in scope, Plaintiff alleges injury from conduct in California, particularly in light of its substantial presence in California.

The Court therefore DENIES Defendant's Motion as to Plaintiff's UCL claim.

### 2.  Below-Cost Sales Claim

Defendant argues Plaintiff's Below-Cost Sales claim fails because (1) Plaintiff did not allege that it was injured by below-cost sales in California; and (2) Plaintiff did not allege adequately the purpose requirement.  (Mot. at 15-17.)

Defendant bases its first argument on *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1464 (9th Cir. 1993).  This case is inapposite.  It addresses the adequacy of the evidence presented to a jury on a Below-Cost Sales claim.  Here, Plaintiff alleges that Defendant engaged in predatory pricing nationwide, including California.  Defendant's first argument thus fails.

Defendant's second argument fares no better.  Section 17043 provides, "It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition."  BPC § 17043.  The California Supreme Court has defined purpose as "desire," distinct from intent or knowledge.  *See Cel-*

17

*Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 174-75 (1999); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153-54 (9th Cir. 2008) ("The California Supreme Court has held that to violate [section 17043], a generalized understanding or intent that particular conduct will injure competition is insufficient to state a claim; instead, the violator must act with the specific *purpose* of injuring its competition.") (emphasis in original)).  The Ninth Circuit has thus maintained that it is critical for a plaintiff to allege specifically that the defendant's purpose was to injure competition.  *Sybersound Records*, 517 F.3d at 1154.

Plaintiff alleges here: "Sinclair's purpose in [offering to give away and giving away labeling machines and labels, as well as offering to sell and selling labeling machines and labels at prices below-cost] was to injure competitors and destroy competition."  This allegation satisfies the purpose requirement.  Defendant's second argument thus lacks merit.

Accordingly, the Court DENIES Defendant's Motion as to Plaintiff's Below-Cost Sales Claim.

### 3.  IIPEA Claim

"To maintain a claim for intentional interference with prospective economic advantage, a plaintiff must prove: (1) an economic relationship between the plaintiff and a third party having the probability of future economic benefit to plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) an intentional, independently wrongful act on the part of the defendant to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages caused by defendant's wrongful act."

18

*Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883,896–97 (C.D. Cal. 2011) (citing *Blank v. Kirwan,* 39 Cal.3d 311, 330 (1985)).

Defendant contends that Plaintiff does not plead sufficient facts to sustain an IIPEA claim.  The Court agrees; Plaintiff's allegations with respect to the first element of the claim are insufficient.  The tort of IIPEA applies to "interference with *existing* noncontractual relations which hold the promise of future economic advantage."  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996) (emphasis in original).  In other words, "[a]llegations that amount to a mere 'hope for an economic relationship and a desire for future benefit' are inadequate to satisfy the pleading requirements of the first element of the tort."  *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005) (quoting *Blank,* 39 Cal.3d at 331).

Plaintiff alleges that it "had prospective economic relationships with a number of packers that probably would have resulted in contracts for such packers to purchase Hurst's POD labeling machines and labels."  (FAC ¶ 58.)  Such an allegation does not satisfy the requisite "existing relationship" requirement; these relationships were simply speculative.  The specific interactions with packers alleged in FAC paragraph 21 do not save Plaintiff's IIPEA claim, contrary to Plaintiff's argument.  None of these examples are ones in which Plaintiff had an existing relationship and Defendant interfered; rather, they are all instances in which the packers were *potential* customers of Plaintiff.  These allegations thus do not rise to the level of a *promise* of future economic advantage, as is required to satisfy the first element.  Plaintiff's IIPEA claim thus fails.

Case 2:17-cv-08070-VAP-AS    Document 38    Filed 05/18/18    Page 20 of 20    Page ID
#:314

The Court therefore GRANTS Defendant's Motion as to Plaintiff's IIPEA claim.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Dismiss as to Plaintiff's federal and BPC claims, and GRANTS Defendant's Motion as to Plaintiff's Intentional Interference with Prospective Economic Advantage with leave to amend.  An amended complaint must be filed no later than May 29, 2018.

**IT IS SO ORDERED.**

Dated:    5/18/18

Virginia A. Phillips
Chief United States District Judge

20